**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------X

In re:                                                            Chapter 11

FIAC CORP., *et al.*,                                    Case No. 16-12238 (BLS)

                                                                   Jointly Administered

                              Debtors.
------------------------------------------------------X

WEST LOOP SOUTH LLC AND
EPOCS REAL ESTATE
PARTNERSHIP, LTD.,

                              Plaintiffs,              Adversary Proceeding No. 17-50556 (BLS)

        v.

SECURE POINT TECHNOLOGIES INC.
(f/k/a IMPLANT SCIENCES
CORPORATION)

        and

DMRJ GROUP LLC,

                              Defendants.

------------------------------------------------------X

**DMRJ GROUP LLC'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS ADVERSARY
PROCEEDING OR, IN THE ALTERNATIVE, ABSTAIN**

Alan M. Root (No. 5427)                      Barbra R. Parlin, Esq.
ARCHER & GREINER, P.C.                  Holland & Knight LLP
300 Delaware Avenue, Suite 1100        31 West 52nd Street
Wilmington, DE 19801                         New York, NY 10019
Telephone: 302-777-4350                     Phone:  212.513.3210
E-mail: aroot@archerlaw.com             Facsimile:  212.385.9010
                                                          E-mail:  barbra.parlin@hklaw.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

STATEMENT OF THE PROCEEDING  AND SUMMARY OF THE ARGUMENTS .............. 1

FACTS ................................................................................................................................. 4

    A.    The Parties ........................................................................................................ 4

    B.    PPVA, the Cayman Liquidation, the Indictment and the SEC Action ................ 5

    C.    The West Loop Creditors' Claims ..................................................................... 6

    D.    The 2012 Note and the Implant Sciences Bankruptcy Cases ............................. 7

    E.    The Equity Committee Settlement ..................................................................... 9

    F.    The 9019 Order and the Disallowance Order .................................................. 10

    G.    The New York Action ..................................................................................... 11

ARGUMENT ..................................................................................................................... 12

I.    THIS ADVERSARY PROCEEDING SHOULD BE DISMISSED FOR LACK OF
SUBJECT MATTER JURISDICTION .......................................................................... 12

    A.    Standard ......................................................................................................... 13

    B.    This Action Must Be Dismissed For Lack of Subject Matter Jurisdiction
Because  It Does Not Arise Under or In, And Is Not Related To, Debtors'
Bankruptcy Cases ........................................................................................... 13

    C.    Subject Matter Jurisdiction Does Not Exist Over Disputes Concerning
Assets that Have Left the Bankruptcy Estate .................................................. 17

II.    BOTH MANDATORY AND DISCRETIONARY ABSTENTION APPLY HERE ....... 19

    A.    Mandatory Abstention is Required Under 28 U.S.C. § 1334(c)(2) .................... 20

    B.    Permissive Abstention also is Warranted Here ................................................ 23

III.    THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY
BE GRANTED BECAUSE THE 9019 ORDER AND DISALLOWANCE ORDER
BAR THE CLAIMS ...................................................................................................... 27

CONCLUSION ................................................................................................................... 32

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 203 North LaSalle Street Partnership,*
246 B.R. 325 (Bankr. N.D. Ill. 2000) ..................................................................31

*In re AMR Corp.,*
567 B.R. 247 (Bankr. S.D.N.Y. 2017) .................................................................28

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) ...........................................................................14, 28

*Beightol v. UBS Painewebber (In re Global Crossing, Ltd. Sec. Litig.),*
311 B.R. 345 (S.D.N.Y. 2003) ...........................................................................20

*Bell Atlantic Corp. v. Twombly,*
127 S.Ct. 1955 (2007) ...................................................................................28

*Beneficial Nat'l Bank v. Anderson,*
539 U.S. 1 (2003) .........................................................................................19

*Carden v. Arkoma Assocs.,*
494 U.S. 185 (1990) ......................................................................................22

*Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.,*
No. CV 7841-VCP, 2015 WL 5278913 (Del. Ch. Sept. 10, 2015)........................28

*Celotex Corp. v. Edwards,*
514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) ...............................16, 21

*In re Chicago, Rock Island and Pacific R.R. Co.,*
794 F.2d 1182 (7th Cir. 1986) .........................................................................13

*In re Combustion Eng'g, Inc.,*
391 F.3d 190 (3d Cir. 2004) ...........................................................................15

*Emerald Capital Advisors Corp. v. Karma Automotive LLC (In re FAH iquidating
Corp. (f/k/a/ Fisker Automotive Holdings, Inc.)), 2017 WL 663521
(Bankr. D. Del. Feb. 16, 2017) .........................................................................23

*In re Eternal Enter., Inc.,*
557 B.R. 277 (Bankr. D. Conn. 2016).................................................................31

*In re Federal-Mogul Global, Inc.,*
300 F.3d 368 (3d Cir. 2002), *cert. denied sub nom. Daimler Chrysler Corp. v.
Official Comm. of Asbestos Claimants,* 537 U.S. 1148 (2003) ............................15

*Feld v. Nat'l Union Fire Ins. Co. (In re Zale Corp.)*,
   62 F.3d 746 (5th Cir. 1995) ....................................................................14

*In re Fort Wayne Telsat, Inc.*,
   403 B.R. 50 (Bankr. N.D. Ind. 2009) .....................................................17

*Frederick-Conaway v. Baird*,
   No. 359, 2016, 2017 WL 1153376 (Del. Mar. 28, 2017) ........................28

*Gannett Co. v. Kanaga*,
   750 A.2d 1174 (Del. 2000) .....................................................................28

*Golding v. First Bank of Whiting*,
   125 B.R. 224 (N.D. Ind. 1991) ..........................................................3, 18

*Gotha v. United States*,
   115 F.3d 176 (3d Cir. 1997) ...................................................................13

*Great Am. Credit Corp. v. Wilmington Hous. Auth.*,
   680 F.Supp. 131 (D. Del. 1988)..............................................................31

*In re Guild and Gallery Plus, Inc.*,
   72 F.3d 1171 (3d Cir. 1996) ...................................................................17

*In re Hall's Motor Transit Co.*,
   889 F.2d 520 (3d Cir. 1989) ...................................................................17

*In re Howard National Corp.*,
   70 B.R. 278 (N.D. Ill. 1987) ...................................................................17

*In re Indian Palms Assoc.*,
   61 F.3d 197 (3d Cir. 1995) .......................................................................4

*Ins. Co. v. DBSI Republic, LLC (In re DBSI, Inc.)*,
   409 B.R. 720 (Bankr. D. Del. 2009) .......................................................23

*In re Integrated Health Servs., Inc.*,
   291 B.R. 615 (Bankr. D. Del. 2003) .......................................................24

*In Re Kaiser Group Intern., Inc.*,
   307 B.R. 449 (D. Del. 2004)....................................................................31

*Kenton v. Kenton*,
   571 A.2d 778 (Del. 1990).........................................................................28

*Matter of Kubly*,
   818 F.2d 643 (7th Cir. 1987) ..................................................................18

*In re LaRoche Industries, Inc.*,
    312 B.R. 249 (Bankr. D. Del. 2004) ................................................................ 23, 24

*In re Maxus Energy Corp.*,
    560 B.R. ............................................................................................................ 23

*In re Maxus Energy Corp.*,
    560 B.R. 111 (Bankr. D. Del. 2016) ...................................................................... 20

*May v. Bigmar, Inc.*,
    838 A.2d 285 (Del. Ch. 2003), *aff'd*, 854 A.2d 1158 (Del. 2004) ......................... 28

*In re Montagne*,
    No. 08-1024, 2010 WL 271347 (Bankr. D. Vt. Jan. 22, 2010) ............................... 28

*New Jersey Steel Corp. v. Bank of N.Y.*,
    223 B.R. 406 (S.D.N.Y. 1998) ................................................................................ 31

*Nuveen Mun. Trust ex rel. Nuveen High Yield Municipal Bond Fund v.
    Withumsmith Brown, P.C.*, 692 F.3d 283 (3d Cir. 2012) ...................................... 13

*In re OODC, LLC*,
    321 B.R. 128 (Bankr. D. Del. 2005) ...................................................................... 30

*Opt-Out Lenders v. Millennium Lab Holdings II, LLC (in re Millennium Lab
    Holdings II, LLC)*,
    __ F. Supp.3d __, 2017 WL 1032992 (Bankr. D. Del. March 17, 2017).................. 26

*Pacor, Inc. v. Higgins*,
    743 F.2d 984 (3d Cir. 1984), *overruled on other grounds*,
    *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 116 S. Ct. 494,
    133 L.Ed.2d 461 (1995)................................................................... 14, 15, 16, 17

*Paul v. Intel Corp. (In re Intel Corp. Microprocessor Anti-Trust Litigation)*,
    496 F.Supp. 2d 404 (D. Del. 2007) ........................................................................ 27

*Quantlab Fin., LLC v. Tower Research Cap., LLC*,
    715 F. Supp. 2d 542 (S.D.N.Y. 2010) .............................................................. 10, 22

*In re Radnor Holdings Corp.*,
    564 B.R. 467 (D. Del. 2017)................................................................................... 28

*In re RNI Wind Down Corp.*,
    348 B.R. 286 (Bankr. D. Del. 2006) ...................................................................... 23

*In re Sportsman's Warehouse, Inc.*,
    457 B.R. 372 (Bankr. D. Del. 2011) ...................................................................... 20

iv

*Stern v. Marshall,*
    564 U.S. 462 (2011) ................................................................. 13, 26

*Stoe v. Flaherty,*
    436 F.3d 209 (3d Cir. 2006) ........................................................14

*Trans World Airlines, Inc. v. Karabu Corp.,*
    196 B.R. 711 (Bankr. D. Del. 1996) ..........................................23, 24

*Valley Media, Inc. v. Toys R Us, Inc. (In re Valley Media, Inc.),*
    289 B.R. 27 (Bankr. D. Del. 2003) ...............................................24

*In re VonGrabe,*
    332 B.R. 40 (Bankr. M.D. Fla. 2005)..............................................17

*W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.),*
    591 F.3d 164 (3d Cir. 2009) ......................................................15

*Wis. Dep't of Corrections v. Schacht,*
    524 U.S. 381 (1998) ..............................................................22

*Worldcom,Inc. v. Graphnet, Inc.,*
    343 F.3d 651 (3d Cir. 2003) ......................................................27

*In re Xonics, Inc.*, 813 F.2d 127 (7th Cir. 1987)............................. 17, 18, 19

*Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412 (3d Cir. 2010) ..................................22

**Statutes**

11 U.S.C. § 101, *et seq.* .................................................................8

11 U.S.C. § 105(a) ......................................................................10

11 U.S.C. § 503...........................................................................29

11 U.S.C. § 510...........................................................................20, 29

11 U.S.C. § 541...........................................................................29, 30

11 U.S.C. § 1501, *et seq.* ...............................................................6

28 U.S.C. § 157............................................................... 13, 21, 22, 24

28 U.S.C. § 1332...........................................................................22

28 U.S.C. § 1334...........................................................................*passim*

Exempted Limited Partnership Law, 2014.................................................5

DMRJ Group LLC ("**DMRJ**") respectfully submits this memorandum of law and the accompanying Declaration of Barbra R. Parlin dated July 10, 2017 (the "**Parlin Declaration**"), together with the Exhibits thereto, in support of its motion to dismiss this adversary proceeding filed by plaintiffs West Loop South LLC ("**West Loop**") and Epocs Real Estate Partnership, Ltd. ("**Epocs**" and together with West Loop, the "**West Loop Parties**" or "**Plaintiffs**") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), made applicable here by Fed. R. Bankr. P. 7012(b)(1) and 7012(b)(6), and in support thereof, states as follows:

**STATEMENT OF THE PROCEEDING
AND SUMMARY OF THE ARGUMENTS[1]**

Even a cursory review of the Complaint reveals that this case is nothing more than a dispute between two non-debtors regarding competing ownership to the proceeds of a fund that are *not part of the bankruptcy estate,* the outcome of which *can have no conceivable effect on the Debtors, the distribution of property to their creditors or equity holders or the administration of their estates*.

By filing this action in the Bankruptcy Court, despite the clear lack of subject matter jurisdiction and constitutional authority and notwithstanding the fact that there already is an action pending in a court of competent jurisdiction in which the very matters at issue can and will be resolved, the West Loop Parties have demonstrated a blatant disregard for the spirit and unequivocal provisions of this Court's prior orders,  forced DMRJ and the Debtors to squander time and incur unnecessary fees, and required this Court to waste scarce judicial resources.  For all of the reasons set forth below, this Court should dismiss this action with prejudice or otherwise abstain from adjudicating this action.

---

[1] Capitalized terms not otherwise defined in this section shall have the meanings ascribed to them in subsequent sections of this Memorandum of Law.

The Complaint in this action purports to seek a determination as to the validity and priority of a lien on or other interest in property of the Debtors' estate.  Yet, neither of the West Loop Parties ever had a direct claim against Implant Sciences, its affiliated debtors-in-possession or any asset of their respective estates, and they certainly do not have one now, as their proofs of claim have been disallowed and any claims they have attach solely to the 2012 Note Reserve.  The 2012 Note Reserve itself is not an asset of the Debtors' estates, as there is no set of circumstances under which any of the funds contained therein ever will revert to Debtors or result in a claim back against their estates.

At most, the West Loop Parties have a limited, non-recourse claim against DMRJ, recovery of which is limited to funds in the 2012 Note Reserve.  That claim arises out of a July 5, 2016 Forbearance and Guaranty Agreement (the "**Alleged Guaranty**"), allegedly entered into by the West Loop Creditors, DMRJ and PPVA, DMRJ's sole member, approximately one month before PPVA commenced liquidation proceedings in the Cayman Islands.

The Alleged Guaranty provides that the West Loop Parties would forbear from exercising their rights and remedies against PPVA in exchange for a limited, non-recourse guaranty by DMRJ of amounts allegedly owed to the West Loop Parties by PPVA, with such guaranty secured by a security interest in and lien on DMRJ's rights to recover under the 2012 Note.  As is evident from the exhibits attached to the Complaint, DMRJ was not a party to or an obligor with respect to the underlying transactions between the West Loop Parties and PPVA, and DMRJ received no consideration in exchange for the Alleged Guaranty.

Prior to the West Loop Parties commencing this adversary proceeding, DMRJ commenced an action against the West Loop Parties in the Supreme Court of the State of New York, County of New York (the "**New York Action**"), seeking a declaratory judgment concerning the validity

and enforceability of the Alleged Guaranty and determining the rights of DMRJ and the West Loop Parties in and to the 2012 Note Reserve. DMRJ had already provided the West Loop Parties with copies of the New York Action when the West Loop Parties commenced this case in this Court. There are substantial questions and disputes concerning the timing and enforceability of the Alleged Guaranty as well as the validity of the underlying transactions. That dispute is between the West Loop Parties and DMRJ, does not involve Debtors and will be adjudicated in the New York Action. The West Loop Creditors' duplicative, later filed, Complaint therefore should be dismissed on the following grounds:

*First*, and most importantly, this Court does not have subject matter jurisdiction over this dispute. Bankruptcy courts have subject matter jurisdiction over cases arising in, under and related to cases under title 11. This adversary proceeding is none of those things. Rather, it is a collateral dispute between non-debtors that does not impact the Debtors' estates in any way. A plaintiff cannot manufacture subject matter jurisdiction by disingenuously naming the debtor as a defendant and consenting to the entry of a final order.

*Second*, even assuming there was a basis for statutory subject matter jurisdiction to determine this dispute, abstention is mandated and there is also cause for this Court to exercise its discretion to abstain from hearing this dispute. Bankruptcy courts routinely abstain in circumstances, like those here, where there is a prior pending action in which the dispute can be entirely resolved, there is no alternative basis for jurisdiction in the federal courts, the litigation is between non-debtors, and the pending issues involve matters of state law.

*Third*, the Complaint also should be dismissed because it fails to state a claim upon which relief can be granted. The West Loop Parties' assert throughout the Complaint that they are entitled to recover directly from the Debtors under the 2012 Note. This assertion, which underlies

3

each count of the Complaint, is barred by the clear and unambiguous terms of this Court's 9019 Order and subsequent Disallowance Order. The West Loop Parties are estopped from denying the effect of these Orders, given that they participated in drafting the same and consented to their submission. So too, the claims in the Complaint are barred because they seek relief under provisions of the Bankruptcy Code that have no application to litigation that does not involve property of the estate or conduct directed towards the debtor.

As noted, this proceeding involves nothing more than a dispute between the West Loop Parties on the one hand and DMRJ on the other. Nothing to be determined in this adversary proceeding has any effect on the Debtors, their estates, or Debtors' ability to propose and confirm a plan. Moreover, any claims the West Loop Parties may have asserted against Debtors have been disallowed. The West Loop Parties were aware that DMRJ already had commenced the New York Action concerning the very matters at issue here, but nevertheless chose to waste scarce judicial resources and cause DMRJ and the Debtors to incur substantial fees and costs by filing this adversary proceeding. Under the circumstances, the Complaint should be dismissed and the Court should award DMRJ its attorneys' fees and costs associated with this action.

## FACTS[2]

### A.    The Parties

Plaintiff West Loop is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 6300 West Loop S., Suite 100, Bellaire, Texas 77401-2930. Plaintiff Epocs is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 6300 West Loop S., Suite 100, Bellaire, Texas 77401-2930.

---

[2] The following discussion is based on the factual allegations in the Complaint and its Exhibits and documents filed on the record of these bankruptcy cases of which this Court can and should take judicial notice. *In re Indian Palms Assoc.*, 61 F.3d 197, 205 (3d Cir. 1995).

#52262240_v1

Defendant DMRJ Group LLC ("**DMRJ**") is a Delaware limited liability company and an accredited institutional investor.

Debtor and Defendant Secure Point Technologies, Inc. f/k/a Implant Sciences Corporation ("**Implant Sciences**") is a Massachusetts corporation.

**B.**      **PPVA, the Cayman Liquidation, the Indictment and the SEC Action**

Platinum Partners Value Arbitrage Fund L.P. (in Official Liquidation) ("**PPVA**") is an exempted limited partnership marketed as a multi-strategy investment fund and registered under the Exempted Limited Partnership Law, 2014 of the Cayman Islands.  PPVA is the sole member of DMRJ.

On August 25, 2016, the Grand Court of the Cayman Islands (the "**Grand Court**") entered an order directing the provisional liquidation of PPVA and appointing Matthew Wright and Christopher Kennedy as its Joint Provisional Liquidators ("**Cayman Liquidation**") with control over all of PPVA's assets, including its subsidiaries such as DMRJ.  On October 18, 2016, the Liquidators filed a petition and accompanying Declaration of Christopher Kennedy seeking recognition of the PPVA's Cayman Liquidation as a foreign main proceeding and of the Liquidators as foreign representatives and certain other relief under chapter 15 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.

On October 27, 2016, the Grand Court entered an order directing that PPVA's Cayman Liquidation be converted to an official liquidation, and appointing Messrs. Wright and Kennedy as Joint Official Liquidators (the "**Liquidators**"), initially on an interim basis, until their permanent appointment was confirmed by way of a Grand Court Order dated December 16, 2016. On November 22, 2016, the Bankruptcy Court for the Southern District of New York entered its order recognizing the Cayman Liquidation as a foreign main proceeding and the Liquidators as

5

foreign representatives under chapter 15 of the Bankruptcy Code, 11 U.S.C. § 1501, *et seq*., (the "**Chapter 15 Recognition Order**").

Before the commencement of the Cayman Liquidation and the appointment of the Liquidators, PPVA and DMRJ were managed by Platinum Management (NY), LLC (the "**Manager**" or "**Platinum Management**") and its employees. Since the commencement of the Cayman Liquidation, PPVA and DMRJ have been and continue to be managed by the Liquidators.

C.    **The West Loop Creditors' Claims**

As noted above, the claims alleged by the West Loop Parties against DMRJ arise out of the Alleged Guaranty, which is dated July 5, 2016. Specifically, the Alleged Guaranty provides that DMRJ would guaranty on a limited, non-recourse basis certain outstanding obligations that PPVA either owed or itself had guaranteed for the benefit of the West Loop Creditors. To secure DMRJ's obligations thereunder, the Alleged Guaranty provides that DMRJ grant to the West Loop Parties a security interest and lien on the 2012 Note (defined below).

The underlying obligations that are the subject of the Alleged Guaranty are: (i) $2,520,386.84 in principal allegedly loaned to PPVA by Epocs pursuant to an August 12, 2015 promissory note (the "**August 12 PPVA Note**"); (ii) $2,569,716.84 for merchandise allegedly sold on credit by West Loop to an entity called MEE Direct, LLC ("**MEE Direct**"), which obligation purportedly was assumed by PPVA; and (iii) $2,065,773.48 for merchandise allegedly sold by West Loop to an entity called TC Ops LLC pursuant to an October 13, 2015 Inventory Purchase and Sale Agreement (the "**Inventory Agreement**"), which amounts likewise purportedly were guaranteed by PPVA. *See* Complaint at ¶ 15 and **Exhibit 1** thereto.

The West Loop Parties attached copies of the August 12 PPVA Note, two August 19, 2015 letter agreements related thereto, the Inventory Purchase Agreement, and the October 29 and November 5, 2015 amendments thereto to the proofs of claim they filed in these cases. *See* Claims

6

Nos. 69-74. Copies of each of the foregoing are attached to the Parlin Declaration as Exhibits B through G for the convenience of the Court. As is evident from a review of the foregoing documents, DMRJ is not a party to or an obligor with respect to any of the underlying agreements or transactions among the West Loop Parties and PPVA. DMRJ did not receive any consideration for agreeing to guaranty the amounts allegedly owed to the West Loop Parties pursuant to the Alleged Guaranty.

Paragraphs 11 of the August 12 PPVA Note specifically requires that any disputes arising out of that Note be governed by New York law. So too, paragraph 12 of the August 12 PPVA Note provides that the exclusive venue for any disputes arising out of the August 12 Note would be the state or federal courts located in New York, New York. *See* Parlin Declaration Exhibit B at ¶¶ 11 and 12. In the complaint, the West Loop Parties allege that New York law applies to the dispute between them and DMRJ. *See* Complaint at ¶ 29.

**D.**     **The 2012 Note and the Implant Sciences Bankruptcy Cases**

On about December 10, 2008, Implant Sciences and DMRJ entered into that certain Note and Warrant Purchase Agreement (as amended from time to time, the "**2008 Note and Warrant Purchase Agreement**"). Over time, Implant Sciences issued four senior secured promissory notes to DMRJ pursuant to the 2008 Note and Warrant Purchase Agreement (collectively the "**Term Notes**"), including that certain 15% senior secured convertible promissory note in the aggregate principal amount of $12 million issued on or about September 5, 2012 (the "**2012 Note**").

DMRJ, as lender, and Implant Sciences, as borrower, also entered into that certain Credit Agreement dated as of September 4, 2009 (the "**Credit Agreement**"), by which Implant Sciences executed and delivered a revolving promissory note (the "**Revolving Note**") to DMRJ in the aggregate principal amount of $3,000,000. Through a series of amendments over the course of the following year, the borrowing limit on the Revolving Note increased to $23,000,000.

7

Implant Sciences' obligations under the 2008 Note Purchase Agreement, the Term Notes, the Credit Agreement and the Revolving Note were guaranteed by its affiliates, IMX Acquisition Corp., C Acquisition Corp. and Accurel Systems International Corporation (collectively the "**Guarantors**"). In addition, such obligations were secured by security interests in and liens on substantially all of the assets of Implant Sciences and the Guarantors as well as the proceeds thereof, as more fully described in Security Agreements dated as of December 10, 2008 and September 4, 2009, by and between Implant Sciences, the Guarantors and DMRJ.

On October 10, 2016 (the "**Petition Date**"), Implant Sciences and each of the Guarantors (collectively, "**Debtors**") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "**Bankruptcy Code**") in this Court. The U.S. Trustee appointed the Official Committee of Equity Security Holders (the "**Equity Committee**") on October 24, 2016.

On December 23, 2016, DMRJ and its affiliate, Montsant Partners, LLC ("**Montsant**") timely filed separate proofs of claim against each of the Debtors in connection with the aggregate amounts due under the Term Notes and the Revolving Note. Each of DMRJ's proofs of claim sought not less than $55,501,943.18, in aggregate principal and accrued interest, plus fees and expenses. Of these amounts, a total of $12,499,125 related to principal and interest due under the 2012 Note as of the Petition Date.

None of the Debtors are parties to, guarantors of or obligors with respect to any transaction with either of the West Loop Creditors, including, *inter alia*, the transactions described in the Alleged Guaranty. In addition, although the West Loop Parties sent DMRJ a notice of default under the Alleged Guaranty on or about November 30, 2016, neither of the West Loop Parties ever notified DMRJ that they had taken any step to foreclose their purported security interest in and

8

lien on DMRJ's interest in the 2012 Note.  The West Loop Parties did, however, file proofs of claim in Debtors' cases, seeking payment of the amount they allege is owed to them by PPVA and DMRJ in connection with the transactions described in the Alleged Guaranty.  *See* Proofs of Claim Nos. 69-74.

**E.**        **The Equity Committee Settlement**

On December 22, 2016, the Equity Committee filed its *Motion for Entry of an Order Granting Standing to Commence and Prosecute Claims on Behalf of the Debtors' Estates Against DMRJ Group LLC and Montsant Partners LLC and for Related Relief* [Dkt. # 366] (the "**Standing Motion**").  In the Standing Motion, the Equity Committee sought authority to commence and prosecute an action for substantial damages against DMRJ and Montsant, and to disallow DMRJ and Montsant's claims under the Term Notes and the Revolving Note.  This Court entered its Order Granting in Part and Denying in Part the Standing Motion on February 13, 2017 (the "**Standing Order**"), by which the Court granted the Equity Committee standing to pursue certain claims (the "**Permitted Claims**") against DMRJ and Montsant, and otherwise denied the Standing Motion.

Although the Standing Order granted the Equity Committee authority to pursue the Permitted Claims, the Order directed that the Equity Committee delay filing a complaint pending the outcome of mediation.  *See* Standing Order at p. 3.  The mediation took place among counsel for DMRJ and Montsant, the Equity Committee and the Debtors on April 4-5, 2017, followed by further negotiations between counsel for DMRJ and Montsant and the Equity Committee.  These negotiations resulted in a settlement by which, among other things, upon entry of an order approving the settlement, Debtors would pay $55,000,000 to DMRJ and Montsant in full satisfaction of all amounts due under the Term Notes and the Revolving Note and all parties to the settlement would exchange releases (the "**Proposed Settlement**").  Thereafter, the Equity Committee filed its *Motion of the Official Committee of Equity Security Holders, Pursuant to*

*Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, for Entry of an Order*
*Approving Settlement Agreement Between the Official Committee of Equity Security Holders,*
*DMRJ Group, LLC, Montsant Partners, LLC and Platinum Partners Value Arbitrage Fund L.P.*
(the "**Settlement Motion**") on April 10, 2017. [Dkt. # 641].

On April 24, 2017, the West Loop Parties filed an objection to the Settlement Motion
("**Settlement Objection**").  In the Settlement Objection, the West Loop Parties argued that they
had direct claims against the Debtors under the 2012 Note for amounts due under the Alleged
Guaranty, and requested a carve out for themselves from the amount to be transferred to DMRJ on
account of amounts allegedly due under the Alleged Guaranty [Dkt. # 674].  After a hearing on
April 27, 2017, the Court indicated that it would grant the Settlement Motion subject to submission
of a proposed order that addressed the concerns of the West Loop Parties and DMRJ.

After the April 27 hearing, counsel for the Debtors, the Equity Committee, DMRJ and
Montsant and the West Loop Parties negotiated a form of order granting the Settlement Motion.
The final form of the negotiated order was submitted with the consent of each of those parties
pursuant to a certification of counsel filed with the Court on June 2, 2017  [Dkt. #748].  The Court
entered the order (the "**9019 Order**") on June 5, 2017 [Dkt. #752].

## F.    The 9019 Order and the Disallowance Order

The 9019 Order approves the Settlement Motion subject to the terms of such Order.
Among other things, the 9019 Order directs that Debtors pay $46,006,422.11 (the "**Settlement**
**Payment**") to DMRJ within two business days after entry of the 9019 Order.

To address the West Loop Creditors' claim that they were entitled to a portion of the
proceeds of the 2012 Note, the 9019 Order provides for the establishment of that certain 2012 Note
Reserve in the amount of $8,993,577.89.  The 2012 Note Reserve consists of the amount of the
West Loop Creditors' alleged claims against PPVA and DMRJ calculated as of April 21, 2017,

10

plus one year's interest accruing at the rate set forth in the agreements between those parties.  The 9019 Order directs that the 2012 Note Reserve be held by the Debtors in a segregated DIP account pending the establishment of a mutually acceptable escrow arrangement between DMRJ and the West Loop Parties or the effective date of Debtors' chapter 11 plan, whichever comes first.

The 9019 Order further directs that, upon the establishment of the 2012 Note Reserve and the payment of the Settlement Payment to DMRJ (defined as the "Effective Date" of the 9019 Order), the proofs of claim filed by the West Loop Parties against Debtors would be disallowed. In addition, as of the Effective Date of the 9019 Order, the West Loop Parties have no liens on or security interests in, or other interests or claims against Debtors, any other assets of Debtors' estates, or any portion of the Settlement Payment, and all of the rights, interests, claims and defenses and security interests of the West Loop Parties with respect to the 2012 Note attach solely to the 2012 Note Reserve.

The 9019 Order makes it clear that Debtors have no interest in any portion of the 2012 Note Reserve.  Specifically, it  provides that the 2012 Note Reserve is established solely for the benefit of the West Loop Parties and DMRJ as their rights may subsequently be determined.

On June 23, 2017, the Court entered a follow up Order granting Debtors' Second Omnibus Objection to Claims insofar as it applied to the West Loop Creditors' proofs of claim (the "**Disallowance Order**").  [Dkt. # 821].  In the Disallowance Order, the Court directed that the West Loop Creditors' proofs of claim be disallowed, because any claims, rights or liens of such creditors attach solely to the 2012 Note Reserve pursuant to the 9019 Order.  *See* Disallowance Order at ¶ 1.

## G.     The New York Action

On June 2, 2017, DMRJ commenced the New York Action against the West Loop Parties in the Supreme Court for the State of New York, Index no. 653019/2017 by filing a summons and

complaint.  *See* Parlin Declaration at Exhibit H.  Counsel for DMRJ forwarded a copy of the New York Action summons, complaint and the exhibits thereto to counsel for the West Loop Parties on June 12, 2017.  *See* Parlin Declaration Exhibit H.  The summons and complaint in the New York action were served on the West Loop Parties on June 14, 2017.  *Id.* at Exhibit I.

Although they were aware of the commencement of the New York Action, the West Loop Parties commenced this adversary proceeding on June 14, 2017 by filing the complaint against DMRJ and Implant Sciences (the "**Complaint**").

## ARGUMENT

I.    **THIS ADVERSARY PROCEEDING SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION**

In a blatant attempt to manufacture subject matter jurisdiction where none exists, the West Loop Parties try to characterize this action as a proceeding on their claim against Implant Sciences under the 2012 Note.  It is not.  Indeed, the West Loop Creditors' proofs of claim have been disallowed, and their sole right of recovery is against the 2012 Note Reserve, which does not contain any property belonging to or in which the Debtors or their estates have any interest.

Instead, as is evident from a review of the Complaint and the transaction documents on which it is premised, this action is nothing more than a dispute between non-debtors concerning the West Loop Creditors' rights to enforce the Alleged Guaranty against an *asset of DMRJ as a purportedly secured creditor of DMRJ*.  The mere fact that the DMRJ asset against which the Alleged Guaranty purports to grant the West Loop Parties recourse happens to be the cash proceeds of an obligation previously owed by the Debtors to DMRJ does not change this dynamic, particularly since the Debtors and their estates have no interest in the 2012 Note Reserve.  Given that this action does not seek relief against the Debtors or involve estate property, and its outcome will not have *any* conceivable impact on the Debtors, their property, their creditors, or the

12

administration of their estates, this Court lacks subject matter jurisdiction and the adversary proceeding must be dismissed.

## A.      Standard

Fed. R. Civ. P. 12(b)(1), made applicable to this adversary proceeding by virtue of Fed. R. Bankr. P. 7012(b)("**Rule 12(b)(1)**"), permits a party-defendant to file a motion seeking dismissal of a complaint if the presiding court lacks subject matter jurisdiction.  When subject matter jurisdiction is challenged, the court may consider evidence and look beyond the pleadings.  *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997).  Subject matter jurisdiction should be assessed at the time the complaint was filed.  *Nuveen Mun. Trust ex rel. Nuveen High Yield Municipal Bond Fund v. Withumsmith Brown, P.C.*, 692 F.3d 283, 298 (3d Cir. 2012)(citations omitted).  Jurisdiction being "the power to decide…it must be conferred and not assumed."  *In re Chicago, Rock Island and Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986).

## B.      This Action Must Be Dismissed For Lack of Subject Matter Jurisdiction Because It Does Not Arise Under or In, And Is Not Related To, Debtors' Bankruptcy Cases

Section 1334 of title 28 of the U.S. Code grants to the district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  Section 157(a) in turn permits the individual district courts to refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy judges for the district, while section 157(d) authorizes the district court to withdraw the reference as to a particular case or proceeding "for cause shown"  28 U.S.C. §§ 157(a), (d).

By these provisions, Congress has essentially granted bankruptcy courts concurrent jurisdiction over three categories of proceedings:  "those that "aris[e] under title 11"; those that "aris[e] in" a  Title 11 case; and those that are "related to a case under title 11."  *Stern v. Marshall*,

13

564 U.S. 462, 473 (2011) (citing 28 U.S.C. § 157(a)).  A proceeding "arising in" title 11 constitutes

the bankruptcy case itself.  A proceeding is one  "arising under" title 11 if it is a "core proceeding"

such that "the Bankruptcy Code creates the cause of action or provides the substantive right

invoked." *Stoe v. Flaherty*, 436 F.3d 209, 217 (3d Cir. 2006)(*quoting Halper v. Halper*, 164 F.3d

830, 836–37 n. 7 (3d Cir. 1999).  Neither circumstance is present here.[3]  As a result, the Bankruptcy

Court may only properly exercise subject matter jurisdiction over this adversary proceeding if it is

"related to" a case under title 11 –here, the Debtors' chapter 11 cases.

In its seminal decision *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984), *overruled on*

*other grounds, Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 124–25, 116 S. Ct. 494, 133

L.Ed.2d 461 (1995), the Third Circuit Court of Appeals defined an action as "related to" a Chapter

11 proceeding if the "outcome of [the] proceeding could conceivably have any effect on the estate

being administered in bankruptcy." *Id.* at 994 (emphasis added); *see also Feld v. Nat'l Union Fire*

*Ins. Co. (In re Zale Corp.)*, 62 F.3d 746, 753 (5th Cir. 1995).

The facts of *Pacor* are instructive.  In that case, a personal injury plaintiff sued Pacor, Inc.

("**Pacor**"), a non-debtor distributor of asbestos containing products that had been manufactured

by Johns-Manville, Inc. ("**Johns-Manville**"), which was then a chapter 11 debtor.  Pacor sought

to remove the personal injury action to the Bankruptcy Court where Johns-Manville's case was

pending on the ground that it was related to the bankruptcy because Pacor had a right of indemnity

or contribution against Johns-Manville if the tort plaintiff prevailed on his claim against Pacor.

---

[3] The West Loop Parties allege that this is a core proceeding because it seeks "to determine rights in and to property of Implant Sciences' bankruptcy estate" *or* alternatively because such claims "arise in and are 'related to' the Debtors' bankruptcy cases in that [its case] will determine whether DMRJ or the West Loop Parties are the legal holder of the promissory note, and will determine the extent to which these respective claimants are entitled to payment from property of the bankruptcy estates." *See* Complaint at ¶ 2.  These are nothing more than legal conclusions that are not entitled to any deference for purposes of this Motion to Dismiss.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).  More importantly, these allegations are belied by the clear terms of the 9019 Order.  9019 Order at ¶¶ 4-8, 11.

The Third Circuit disagreed.  It held that the possibility of future contribution or indemnity claims against the debtor arising out of litigation among non-debtors was not sufficient to make the non-debtor litigation "related to" Manville's bankruptcy case.

> At best, [the personal injury lawsuit] is a mere precursor to the potential third party claim for indemnification by Pacor against Manville.  Yet the outcome of the [the personal injury lawsuit] would in no way bind Manville, in that it could not determine any rights, liabilities, or course of action of the debtor. Since Manville is not a party to the [the personal injury lawsuit], it could not be bound by res judicata or collateral estoppel.

*Id.* at 995.  Thus, under *Pacor*, a lawsuit among non-debtors is not related to the debtor's bankruptcy case *unless the lawsuit can affect the bankruptcy case without the intervention of another legal proceeding* such as seeking allowance of a proof of claim in the bankruptcy case.

Since *Pacor*, courts in the Third Circuit routinely find that the bankruptcy court lacks subject matter jurisdiction to hear cases between non-debtors where the claim lacks a direct connection to the underlying bankruptcy case.  *See, e.g.*, In re *Federal-Mogul Global, Inc.*, 300 F.3d 368, 376 (3d Cir. 2002) (denying mandamus), *cert. denied sub nom. Daimler Chrysler Corp. v. Official Comm. of Asbestos Claimants*, 537 U.S. 1148 (2003) (the "routine nature of this kind of arrangement and lack of other connections between [Chrysler and the debtor] makes this [contractual boilerplate] too thin a thread with which to pull [Chrysler] into the [debtor's] bankruptcy"); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225-27 (3d Cir. 2004) (overturning confirmation order approving a pre-packaged plan that contained channeling injunction covering claims by plaintiffs against non-debtor affiliates for lack of subject matter jurisdiction); *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 591 F.3d 164, 171 (3d Cir. 2009) ("there is no related-to jurisdiction over a third-party claim if there would need to be another lawsuit before the third-party claim could have any impact on the bankruptcy proceedings").  The United States

15

Supreme Court has endorsed *Pacor's* "conceivability" standard, observing that "related to" jurisdiction "cannot be limitless," and reaffirming that "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 & n. 6, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).

Applying *Pacor* here, it is clear that this Court does not have subject matter jurisdiction over this dispute among non-debtors. All claims asserted by West Loop Parties against the Debtors have been disallowed and any right they may have to a portion of the payout from the 2012 Note attach solely to the 2012 Note Reserve. Similarly, DMRJ's claims against the Debtors were deemed satisfied as a result of the Settlement Payment and the funding of the 2012 Note Reserve, and its rights to the monies used to fund the 2012 Note Reserve likewise attach thereto.

This litigation also does not involve assets of the Debtors' estates. The 2012 Note itself was never an *asset* of Debtors, but rather a payment *obligation* owed by them. By contrast, the 2012 Note at all times was *an asset of DMRJ,* in which asset the West Loop Parties assert that they were granted a lien to secure *DMRJ's* alleged obligations to the West Loop Parties under the Alleged Guaranty. By the same token, the Debtors have no interest in the monies contained in the 2012 Note Reserve, which the 9019 Order makes clear was established solely for the benefit of DMRJ and the West Loop Creditors. *See* 9019 Order at ¶ 4.

Notwithstanding the West Loop Creditors' disingenuous styling of their causes of action, with gratuitous references to Bankruptcy Code sections that can only be invoked by debtors or creditors in connection with claims concerning the estate, this case is nothing more than a dispute between two non-debtors regarding competing ownership to the proceeds of a fund that are *not part of the bankruptcy estate,* the outcome of which *can have no conceivable effect on the Debtors, the distribution of property to their creditors or equity holders or the administration of their*

16

*estates.*  Regardless of whether the West Loop Parties or DMRJ is the prevailing party, the outcome will not impact their proofs of claim, the amount distributed to creditors or equity holders, or the administration of the Debtors' bankruptcy estates in any manner.  The litigation also will not trigger further suits involving the Debtors or additional claims against the estates.  Indeed, unlike *Pacor* and its progeny, where there was at least an argument that the initial litigation between non-debtors could result in a claim back against the debtor's estate, here there is no possibility that the dispute will have any effect on Debtors or their estates.

As such, this case presents even less of a basis for "related to" jurisdiction than was rejected by *Pacor* and its progeny.  *See In re Fort Wayne Telsat, Inc.*, 403 B.R. 50 (Bankr. N.D. Ind. 2009) (bankruptcy court lacked jurisdiction over claims between creditors not involving estate property or affecting other creditors); *see also In re Howard National Corp.*, 70 B.R. 278, 282 (N.D. Ill. 1987) (a request for bankruptcy court to determine interests of two competing secured creditors to abandoned, non-estate property is not within "related to" jurisdiction); *In re VonGrabe*, 332 B.R. 40 (Bankr. M.D. Fla. 2005) (no jurisdiction over disputes relating to property that is not property of the estate).  Under the circumstances, Rule 12(b)(1) mandates dismissal for lack of subject matter jurisdiction.

## C.     **Subject Matter Jurisdiction Does Not Exist Over Disputes Concerning Assets that Have Left the Bankruptcy Estate**

This Court also does not have subject matter jurisdiction to consider claims raised in an adversary proceeding involving property that has left the bankruptcy estate.  *See In re Hall's Motor Transit Co.*, 889 F.2d 520, 522 (3d Cir. 1989); *see also In re Guild and Gallery Plus, Inc.*, 72 F.3d 1171, 1180 (3d Cir. 1996) (since asset was not property of estate, court lacked jurisdiction over dispute); *In re Xonics, Inc.*, 813 F.2d 127 (7th Cir. 1987) (dismissal for lack of subject matter jurisdiction warranted if suit will not result in impact on distribution to other creditors); *see also*

*Golding v. First Bank of Whiting*, 125 B.R. 224, 227 (N.D. Ind. 1991) *quoting Matter of Paso del Norte Oil Co.*, 755 F.2d 421, 425 (5th Cir. 1985)("Bankruptcy courts lack jurisdiction over controversies not involving claims against the debtor or its properties…"); *Matter of Kubly*, 818 F.2d 643 (7th Cir. 1987).

The *Xonics* case is directly on point here.  In that case, two secured creditors claimed security interests in the debtor's accounts receivables.  During the chapter 11 case, the creditors agreed to place the proceeds of the disputed collateral in escrow, with their respective rights to be determined in a later action.  In the meantime, the bankruptcy court confirmed a plan of reorganization pursuant to which the debtor abandoned any interest in the escrowed receivable proceeds.  Thereafter, one of the secured creditors attempted to invoke bankruptcy court jurisdiction over its dispute with the other purported lienholder concerning their respective rights in the escrowed receivables, arguing that the bankruptcy court had issued the order establishing the escrow account and had retained the power to enforce that order.  813 F.3d at 129.

The Seventh Circuit rejected that argument, noting that, similar to the 9019 Order here, the order establishing the escrow account "simply allows [the debtor] to deposit the money…and provides that the parties' attorneys shall release money when the parties agree" but that the "rights of the parties to the money must be resolved without reference to the court's order."  813 F.2d at 131.  The Seventh Circuit further held that if the ultimate disposition of the asset or outcome of the creditors' dispute could not possibly affect other creditors or the allocation of property among other creditors once abandoned, bankruptcy jurisdiction would not "linger" rendering a suit subject to dismissal.  813 F.2d at 132.  Under the circumstances, the bankruptcy court did not have subject matter jurisdiction over the creditors' dispute.

18

In this case, there is no question that the 2012 Note Reserve was funded with monies paid by the Debtors.    But, as noted above, subject matter jurisdiction is measured as of the commencement of the adversary proceeding.    *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).  By that time, the Debtors had funded the 2012 Note Reserve and made the Settlement Payment to DMRJ, and in so doing had satisfied all obligations they had with respect to the Revolving Note and the Term Notes, including the 2012 Note.  As a result, irrespective of whether the West Loop Parties ever could have asserted a direct claim against Debtors under the 2012 Note, as of the commencement of this adversary proceeding, there simply is no dispute concerning Debtors' obligations under the 2012 Note because they have none to anyone.  Debtors also do not have any reversionary rights to recover any portion of the monies used to fund the 2012 Note Reserve.  So too, the 2012 Note itself no longer exists since it is deemed satisfied in full under the 9019 Order and the Settlement.

Thus, as in *Xonics*, the only question that remains is one regarding the enforceability of DMRJ's obligations to the West Loop Parties under the Alleged Guaranty and the competing rights of DMRJ and the West Loop Parties to the funds contained in the 2012 Note Reserve.  Even though this Court retained the power to authorize a release of the 2012 Note Reserve in accordance with the 9019 Order, that right of release does not give this Court subject matter jurisdiction to adjudicate – let alone, finally determine – the claims between DMRJ and West Loop that must be resolved before the 2012 Note Reserve can be distributed.  For this additional reason, dismissal is warranted and mandated by Federal Rule 12(b)(1).

## II.    BOTH MANDATORY AND DISCRETIONARY ABSTENTION APPLY HERE

Dismissal of this action is mandated due to a lack of subject matter jurisdiction.  In addition, this Court is required to abstain from hearing this action and should otherwise exercise its discretion to abstain under 28 U.S.C. § 1334.

A.     **Mandatory Abstention is Required Under 28 U.S.C. § 1334(c)(2)**

A bankruptcy court is required to abstain from hearing certain non-core matters that may otherwise be "related to" a case under title 11, if adjudication in state court would be more efficient for all parties involved.  *See* 28 U.S.C. § 1334(c)(2); *see also, e.g., In re Sportsman's Warehouse, Inc.*, 457 B.R. 372, 389 (Bankr. D. Del. 2011); *In re Maxus Energy Corp.*, 560 B.R. 111, 120 (Bankr. D. Del. 2016).  The mandatory abstention rule is designed "to require federal courts to defer to the state courts to handle lawsuits which, although 'related to' a bankruptcy, can be promptly resolved in state court without interfering with the proceedings pending in the federal courts." *Beightol v. UBS Painewebber (In re Global Crossing, Ltd. Sec. Litig.)*, 311 B.R. 345, 349 (S.D.N.Y. 2003).

Abstention is mandated when the following requirements are satisfied: (i) the motion to abstain is timely; (ii) the action is based upon a state law claim or cause of action; (iii) an action has been commenced in state court; (iv) the action can be timely adjudicated in state court; (v) there is no independent basis for federal jurisdiction which would have permitted the action to be commenced in federal court absent bankruptcy; and (vi) the matter is non-core and is only "related to" a case under title 11.  *In re Sportsman's Warehouse, Inc.*, 457 B.R. 372, 389 (2011)  A party moving for mandatory abstention "must meet all the requirements of mandatory abstention for relief to be granted." *Great Am. Ins. Co. Mobile Tool Int'l, Inc. (In re Mobil Tool Int'l, Inc.)*, 320 B.R. 552, 556 (Bankr. D. Del. 2005).

Abstention is clearly mandated here.  DMRJ's motion for abstention is timely made, as part of its motion to dismiss the Complaint.  The claims alleged by the West Loop Parties in this adversary proceeding are either directly governed by or derive from New York state law. [4]  Indeed,

---

[4] DMRJ notes that Count 3 of the Complaint purports to state a claim for enforcement of a subordination agreement under Section 510(a) and equitable subordination under Section 510(c) of the Bankruptcy Code.  However, as detailed

Case 17-50556-BLS   Doc 7   Filed 07/10/17   Page 27 of 38

the fundamental issue underlying their dispute with DMRJ is the validity and enforceability of the Alleged Guaranty, a pre-petition contract negotiated in the state of New York and to which the West Loop Parties allege (and DMRJ agrees) New York law applies. The August 12 PPVA Note, one of the transactions that DMRJ purportedly guaranteed under the Alleged Guaranty, likewise contains a New York governing law clause and makes the state and federal courts in New York, New York the exclusive venue for resolving disputes arising out of that agreement. *See* Parlin Declaration at Exhibit B.

There also is an existing action in which the West Loop Creditors' claims can be adjudicated. DMRJ initiated the New York Action before the West Loop Parties filed this adversary proceeding, and the West Loop Parties were aware of that New York Action before they filed this case. While both cases have just been commenced, there is no reason to believe that the dispute between the West Loop Parties and DMRJ cannot be timely adjudicated by the New York Supreme Court.

DMRJ notes that the West Loop Creditors' Complaint alleges that diversity jurisdiction exists between them and DMRJ. *See* Complaint at ¶ 2. First, the existence of diversity jurisdiction cannot substitute when there is no basis for bankruptcy court subject matter jurisdiction over this action. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307, (1995) ("The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute."). As discussed in detail above, this Adversary Proceeding is not a core proceeding under 28 U.S.C. § 157(b)(2). It is also not a non-core proceeding, insofar as it is in no way "related to" the Debtors' bankruptcy cases, does not concern claims by or against the Debtors or their property, and its outcome has no

---

below, claims under those sections are inapplicable in this context and foreclosed by the 9019 Order. In any case, the basis for the claim is a pre-petition contract between the West Loop Creditors, PPVA and DMRJ and related underlying agreements between the West Loop Parties and PPVA, to none of which are the Debtors parties and that are all governed by New York state law.

#52262240_v1

effect on the Debtors, their estates, their creditors or equity holders.  Indeed, this is nothing more than a collateral dispute between non-debtors regarding non-estate property governed by state law.

Second, even if diversity jurisdiction somehow could confer subject matter jurisdiction upon a Bankruptcy Court, diversity does not exist in this case.  In determining whether diversity jurisdiction under 28 U.S.C. § 1332 exists, the citizenship of a limited liability company or limited partnership is determined by looking at the citizenship of each of its members or partners.  *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990); *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) .  If those members or partners are themselves limited liability companies or limited partnerships, then the citizenship of their respective members and partners is taken into account.  Courts require a complete upstream ownership analysis of each of the parties in order to confirm that diversity jurisdiction exists.  *See Zambelli*, 592 F.3d at 420 (noting that citizenship of an LLC is determined by a complete upstream analysis of its organizational structure); *Quantlab Fin., LLC v. Tower Research Cap., LLC*, 715 F. Supp. 2d 542, 546-47 (S.D.N.Y. 2010) (court evaluated citizenship of LLC through 10 layers of organizational hierarchy to assess diversity).

Here, the West Loop Parties allege that they are organized under the laws of Texas with their principal place of business located in Bellaire, Texas.  Complaint at ¶¶ 6-7.  Assuming that the West Loop Creditors' limited partners and members are citizens of Texas, diversity jurisdiction does not exist here because the plaintiffs and the defendants include citizens of the same state. *Wis. Dep't of Corrections v. Schacht*, 524 U.S. 381, 388 (1998).  DMRJ is a Delaware limited liability company but its sole member is PPVA.  PPVA is organized under Cayman law, and its limited partners are Platinum Partners Value Arbitrage Fund (USA) LP, a Delaware limited partnership, and Platinum Partners Value Arbitrage Fund (International) Limited – In Official Liquidation, a

Cayman Islands exempted limited liability company (collectively, the "**Platinum Feeder Funds**"), both of which in turn include as limited partners and/or shareholders individuals from many states, including Texas. *See* Parlin Declaration at ¶ 3. Given that the Platinum Feeder Funds' underlying investors include individuals from the same state as the West Loop Creditors, diversity does not exist in this case.

Under the circumstances, this Court is required to abstain from hearing this Adversary Proceeding pursuant to 28 U.S.C. § 1334(c)(2).

**B.**    <u>**Permissive Abstention also is Warranted Here**</u>

Irrespective of whether abstention is mandated, bankruptcy courts have discretion to abstain "from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). The decision of the court on permissive abstention is left to the bankruptcy court's broad discretion. *Trans World Airlines, Inc. v. Karabu Corp.*, 196 B.R. 711, 715 (Bankr. D. Del. 1996); *In re LaRoche Industries, Inc.*, 312 B.R. 249, 255 (Bankr. D. Del. 2004); *In re RNI Wind Down Corp.,* 348 B.R. 286, 295 (Bankr. D. Del. 2006).

Delaware bankruptcy courts consider the following twelve-factor test in determining whether to exercise their discretion to abstain from hearing an action. *See, e.g., Emerald Capital Advisors Corp. v. Karma Automotive LLC (In re FAH Liquidating Corp., (f/k/a/ Fisker Automotive Holdings, Inc.))*, 2017 WL 663521, at \*5 (Bankr. D. Del. Feb. 16, 2017); *In re Maxus Energy Corp.*, 560 B.R. at 124–125; *Republic Underwriter s Ins. Co. v. DBSI Republic, LLC (In re DBSI, Inc.)*, 409 B.R. 720, 728–729 (Bankr. D. Del. 2009):

1.    the effect or lack thereof on the efficient administration of the estate;

2.    the extent to which state law issues predominate over bankruptcy issues;

3.    the difficulty or unsettled nature of applicable state law;

23

4.      the presence of a related proceeding commenced in state court or other non-bankruptcy court;

5.      the jurisdictional basis, if any, other than section 1334;

6.      the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

7.      the substance rather than the form of an asserted "core" proceeding;

8.      the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

9.      the burden of the court's docket;

10.     the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

11.     the existence of a right to a jury trial; and

12.     the presence of non-debtor parties.

*See also LaRoche Indus., Inc. v. Orica Nitrogen LLC (In re LaRoche Indus., Inc.),* 312 B.R. 249, 253–54 (Bankr. D. Del. 2004); *see also In re Integrated Health Servs., Inc.,* 291 B.R. 615, 619 (Bankr. D. Del. 2003); *Valley Media, Inc. v. Toys R Us, Inc. (In re Valley Media, Inc.),* 289 B.R. 27, 29 (Bankr. D. Del. 2003).

In evaluating these factors, a court does not engage in a mere "mathematical exercise." *Trans World Airlines, Inc. v. Karabu Corp.,* 196 B.R. 711, 715 (Bankr. D. Del. 1996). Rather, courts weigh some factors more than others, particularly the effect of hearing a matter on the administration of the estate, whether the claim involves only state law issues, and whether the proceeding is "core" or "non-core" under 28 U.S.C. § 157 and thus whether it can be finally decided by the Bankruptcy Court. *In re LaRoche Indus.,* 312 B.R. at 255.

Here, every factor weighs in favor of this Court exercising its discretion to abstain from adjudicating this Adversary Proceeding. Abstention will have no effect on the efficient administration of the Debtors' estates. While the West Loop Parties disingenuously named

24

Implant Sciences as a defendant in this action, a review of the prayer for relief in the Complaint makes it clear that they do not seek any actual relief against any of the Debtors.  Nor could they, since any claims that the West Loop Parties may have purported to assert against Debtors have been disallowed and all of their rights assigned solely to the 2012 Note Reserve, in which the Debtors and their estates have no interest.  Under the circumstances, this Adversary Proceeding is entirely separate from the Debtors' bankruptcy cases, involving non-debtor parties with a right to trial by jury.

Indeed, it is the decision not to abstain that will have a detrimental effect, as the Debtors' confirmation hearing is scheduled to take place in a few short weeks.  Once the plan becomes effective, there is likely to be very little activity remaining in these cases.  So too, state law issues predominate in this Adversary Proceeding, the gravamen of which is the enforceability of a guaranty and the necessary consideration to be provided under a contract negotiated and executed in the State of New York.

There also already exists a prior pending action – the New York Action commenced by DMRJ -- in which all of the matters at issue here can and should be resolved.  It would be a waste of judicial resources for this Court to hear this dispute when the very same issues will be litigated in New York state court.  DMRJ also submits that this Court should not countenance the West Loop Creditors' clear forum shopping, given that they initiated this proceeding with full knowledge that the New York Action already was pending.

As discussed in detail above, this Court does not have subject matter jurisdiction under 28 U.S.C. § 1334, nor is there any other basis for subject matter jurisdiction in a federal court.  *See infra* at pp. 13-19.  In addition, because this is not a core proceeding [or even a non-core proceeding], this Court lacks constitutional authority to finally determine the claims in the

25

Complaint under *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594 (2011) and its progeny.  The West Loop Creditors' claims do not involve *public rights* which Congress has assigned to bankruptcy courts for final determination, and have absolutely no nexus to the claims adjudication process in the Debtors' respective bankruptcy cases required for this Court to make a final determination. *Stern*, 131 S. Ct. at 2619.  Rather, this proceeding is nothing more than a dispute between non-debtors as to their respective private rights to the 2012 Note Reserve, and does not involve the property of or claims against the Debtors whatsoever. *See Opt-Out Lenders v. Millennium Lab Holdings II, LLC (in re Millennium Lab Holdings II, LLC)*, __ F. Supp.3d __, 2017 WL 1032992 (Bankr. D. Del. March 17, 2017) (*Stern* concerns raised in cases involving non-bankruptcy claims between non-debtors).

The West Loop Parties cannot cure this lack of constitutional authority by naming Implant Sciences as a nominal defendant and conclusorily alleging that the claims are core, particularly where, as here, any claim the West Loop Parties may have had against the Debtors has been disallowed in accordance with the requirements of the 9019 Order and all of their claims and rights attach solely to the 2012 Note Reserve. [5]  The 2012 Note Reserve also is not an asset of the Debtors' estates, as there is no set of circumstances under which any of the funds contained therein ever will revert to Debtors.  Given that the West Loop Creditors' only claims are against DMRJ concerning the enforceability of the Alleged Guaranty and rights to payment out of the 2012 Note Reserve, this Court does not have either statutory or constitutional authority to finally determine this adversary proceeding.  *See Stern*, 131 S.Ct. at 2614 (claims "between two private parties" based on state common law or statutes that are not closely intertwined with a federal regulatory program are "private" rights that must be adjudicated by an Article III Court).  As DMRJ has

---

[5] Notably, the West Loop Creditors' prayer for relief does not seek any relief from Implant Sciences. Complaint at p. 11-12.

#52262240_v1

previously filed the New York Complaint and does not consent to this Court making a final determination on the claims of the West Loop Creditors, it is a waste of judicial resources for this Court to preside over this proceeding where the New York Supreme Court is fully capable of entering a final judgment.

For all of these reasons, this Court should exercise its discretion to abstain from hearing this Adversary Proceeding under 28 U.S.C. § 1334(c)(1).

## III.   THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED BECAUSE THE 9019 ORDER AND DISALLOWANCE ORDER BAR THE CLAIMS

As an alternative to the arguments raised above, the Complaint also can and should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  All of the causes of action presented in the Complaint are barred by the clear terms of the 9019 Order and subsequent Disallowance Order, the terms of which the West Loop Parties helped draft and to which they clearly consented.

"The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Anti-Trust Litigation),* 496 F.Supp. 2d 404, 407 (D. Del. 2007). In considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to the plaintiff. *Worldcom,Inc. v. Graphnet, Inc.,* 343 F.3d 651, 653 (3d Cir. 2003).

The Supreme Court has held that that conclusory or bare-bones allegations will no longer survive a motion to dismiss under Rule 12(b)(6); threadbare recitals of elements of a cause of action, supported by mere conclusory statements do not suffice. To prevent dismissal, all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible. This then allows the court to draw the reasonable inference that the defendant is liable for the

27

misconduct alleged. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1948-49 (2009); *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964 (2007).

It is well-settled that "issues already decided by the same court should be adopted without relitigation." *May v. Bigmar, Inc.*, 838 A.2d 285, 288 n.8 (Del. Ch. 2003), *aff'd,* 854 A.2d 1158 (Del. 2004). This doctrine, known as "law of the case," is "founded on the principle of stability and respect for court processes and precedent." *Gannett Co. v. Kanaga*, 750 A.2d 1174, 1181 (Del. 2000). It applies when "a specific legal principle is applied to an issue presented by facts which remain constant throughout litigation" *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, No. CV 7841-VCP, 2015 WL 5278913, at \*7 (Del. Ch. Sept. 10, 2015) (quoting *Hoskins v. State,* 102 A.3d 724, 729 (Del. 2014)); *Kenton v. Kenton,* 571 A.2d 778, 784 (Del. 1990); *Frederick-Conaway v. Baird*, No. 359, 2016, 2017 WL 1153376, at \*7 (Del. Mar. 28, 2017). Put another way, as a form of intra-litigation *stare decisis,* the law of the case doctrine "bars re-litigation 'of matters once decided during the course of a single continuing lawsuit' and applies to 'subsequent rulings by the same judge in the same case or a closely related one [and] to rulings by different judges at the same level.'" *In re Radnor Holdings Corp.*, 564 B.R. 467, 482 (D. Del. 2017) (quoting *Casey v. Planned Parenthood*, 14 F.3d 848, 856 (3d Cir. 1994)).[6]

As styled and captioned, the West Loop Creditors' Complaint is a "Complaint to, Among Other Things, Determine the Validity, Priority, and Extent of a Lien Upon, or Other Interest In, Property of the Bankruptcy Estate." Count One is for the "*Determination of the Validity, Extent and Priority of the West Loop Creditors' Lien, Interest In, and Right To Payment under, the 2012*

---

[6] West Loop and Epocs cannot escape the law of the case doctrine by commencing an adversary proceeding, as courts have held that a main bankruptcy case and an adversary proceeding are the same proceeding for purposes of the law of the case doctrine. *See, e.g., In re Radnor Holdings Corp.*, 564 B.R. at 483 (citing *In re DuFrayne*, 194 B.R. 354, 358 (E.D. Pa. 1996) ("the factual findings made in the [main bankruptcy case opinion denying confirmation] are the law of the case and are therefore binding on the parties in this [adversary] proceeding.")); *In re AMR Corp.*, 567 B.R. 247, 256 (Bankr. S.D.N.Y. 2017) (citing cases); *In re Montagne*, No. 08-1024, 2010 WL 271347, at \*6 (Bankr. D. Vt. Jan. 22, 2010) (same).

28

*Note*" and references Sections 541 and 503 of the Bankruptcy Code.  Count Two is for "*Specific Performance in Enforcement of Security Interest*"  and seeks rulings that the West Loop Parties have a direct right to payment from Implant Sciences under the 2012 Note and preventing DMRJ from interfering with same.  Count Three is the West Loop Creditors' "*Objection to DMRJ's Claims, Request to Enforce Subordination Agreement, and in the Alternative, for Equitable Subordination*" under Sections 510(a) and 510(c) of the Bankruptcy Code.  Count Four is a "*Request for Declaratory Relief*" under Rule 7001(9) that seeks the same relief as in Counts I through III.  In it, the West Loop Parties state that they "seek a declaration that they presently hold a direct claim under the promissory note *against the estate of Implant Sciences, as evidenced by duly filed and supported proofs of claim,*" or, alternatively, to foreclose their security interest against their collateral – including the promissory note and its proceeds."  *Complaint, at p. 2.* (emphasis added).

The foregoing recitation demonstrates that, as pleaded, the claims in the Complaint seek relief with respect to the West Loop Creditors' alleged right to payment from the Debtors under the 2012 Note.  As the West Loop Parties are well aware but conveniently fail to mention in their Complaint, under the clear terms of the 9019 Order, the West Loop Parties do not hold any claims against the Debtor, since their "duly filed" proofs of claim have been disallowed and the 2012 Note has been paid and satisfied with the funding of the 2012 Note Reserve:

> Except as to the 2012 Note Reserve, **the West Loop [Parties] shall have no liens on or security interests in, or other interests in or claims against** . . . **the Debtors or any other assets of the Debtors' bankruptcy estates**. Upon the Effective Date, all of the rights, interests, claims and defenses, and security interests of the West Loop [Parties] with respect to the 2012 Note, as they may be determined, as evidenced by their timely filed Proofs of Claim recorded as Nos. 69-74 (the "West Loop [Parties'] Claims"), shall transfer and attach to the 2012 Note Reserve, and **such West Loop [Parties'] Claims shall otherwise be disallowed in these chapter 11 cases.**

*9019 Order* at ¶ 8 (emphasis added); *See also Disallowance Order* at ¶ 1.[7]

The 9019 Order also makes clear that the Debtors do not hold any ownership interest or other rights to the 2012 Note Reserve.  Those funds were set aside "solely for the benefit of the West Loop Parties and DMRJ" (*9019 Order* at ¶ 4), and the Debtors do not have any reversionary interest in the 2012 Note Reserve.  As such, the 2012 Note Reserve simply does not qualify as "property of the estate" of Implant Sciences pursuant to Section 541 of the Bankruptcy Code.[8] Likewise, the 9019 Order resolved any and all disputes regarding the Debtors' obligations to pay under the 2012 Note and it is deemed satisfied pursuant thereto, so there is no longer any basis for the West Loop Parties to obtain relief against or specific performance and payment from the Debtors.

By the same token, under the clear terms of the 9019 Order, DMRJ no longer holds any claims against the Debtors:

> Any liens on or security interest in, or other interests in or claims against, any property of the Debtors held or asserted by, or in favor of, the DMRJ Parties and PPVA shall be deemed released, discharged, and terminated upon the Effective Date; and any claims, liens, security interests, interest and defenses which DMRJ might have or assert under or in connection with the 2012 Note shall transfer and attach to the 2012 Note Reserve.

*9019 Order* at ¶ 7.[Dkt. # 821 at ¶ 1].  Section 510 provides for the enforcement of contractual subordination agreements and for equitable subordination as between competing claims against an estate.  Since DMRJ and the West Loop Parties do not have claims against Debtors pursuant to the 9019 Order, those sections have no application to their dispute.  *See, e.g., In re OODC, LLC*, 321

---

[7] The  Disallowance Order provides that:
> All of the rights, interests, claims and defenses and security interests of the West Loop [Parties] with respect to the 2012 Note, as may be determined, as evidenced by their timely filed Proofs of Claim Nos. 69-74, having transferred and attached to the 2012 Note Reserve in accordance with the [9019] Order, shall be and hereby are otherwise disallowed in these chapter 11 cases pursuant to the terms of the [9019] Order.

[8] The fact that the Debtors are holding those funds on a temporary basis out of convenience while DMRJ and the West Loop Parties work to establish a replacement escrow account does not grant Debtors any rights in the 2012 Note Reserve.

#52262240_v1

B.R. 128, 146 (Bankr. D. Del. 2005) ("Equitable subordination is remedial and is used to cure an inequity *in a claim against the bankruptcy estate* that would produce unfair results.") (emphasis added); *In re Eternal Enter., Inc.*, 557 B.R. 277, 288 (Bankr. D. Conn. 2016) (explaining that where there is no claim against the estate, "there is nothing to be equitably subordinated under 11 U.S.C. § 510(c), and the conduct of the former claimant is irrelevant"); *New Jersey Steel Corp. v. Bank of N.Y.*, 223 B.R. 406, 414 (S.D.N.Y. 1998) (explaining that equitable subordination doctrine was limited to bankruptcy setting, and could not be applied where supplier was asserting claim against bank for its alleged breach of inter-creditor agreement, not a claim against the debtor's bankruptcy estate). *See In re 203 North LaSalle Street Partnership*, 246 B.R. 325, 331 (Bankr. N.D. Ill. 2000)(section 510(a) applies to subordination agreements in connection with the disputes as to priority of payment *from* the debtor's estate). Likewise, the 2012 Note Reserve does not contain assets that belong to the Debtors or in which the Debtors have any interest.

The West Loop Parties are estopped from contesting the terms of the 9019 Order. Equitable estoppel arises when that party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to act to his or her detriment. *Great Am. Credit Corp. v. Wilmington Hous. Auth.,* 680 F.Supp. 131, 134 (D. Del. 1988); *see In Re Kaiser Group Intern., Inc.*, 307 B.R. 449 (D. Del. 2004)(debtor equitably estopped from initiating adversary proceeding due to arbitration clause). Here, the West Loop Parties negotiated and agreed to the terms of the 9019 Order. DMRJ, in reasonable reliance on the 9019 Order and the West Loop Creditors' consent to establishment of the 2012 Note Reserve, filed the New York Action to resolve a dispute involving non-debtor parties and non-debtor assets. Equity demands that the West Loop Parties not be permitted to contest the terms of the 9019 Order to which they previously consented.

#52262240_v1

Given that this Court's 9019 Order is the "law of the case," the West Loop Creditors' attempts to invoke Sections 541, 510 and 503 and to see a declaration as to their right to payment directly from the Debtors' fails and the Complaint must be dismissed for failure to plead claims upon which relief can be granted.

## CONCLUSION

The West Loop Parties' Complaint is nothing more than a failed effort to disguise a plain vanilla state court contract dispute between non-debtors as claims impacting the claims allowance process. By filing this action in the Bankruptcy Court despite the clear lack of subject matter jurisdiction and notwithstanding that there already was an action pending in a court of competent jurisdiction, the West Loop Parties have demonstrated a blatant disregard for the 9019 Order, forced DMRJ and the Debtors to squander time and incur unnecessary fees, and required this Court to waste scarce judicial resources. For all of the reasons set forth herein, this Court should dismiss this action with prejudice, award DMRJ its costs and fees associated with this matter and direct such other and further relief as this Court deems just and proper.

Dated: July 10, 2017

/s/  Alan M. Root
Alan M. Root (No. 5427)
ARCHER & GREINER, P.C.
300 Delaware Avenue, Suite 1100
Wilmington, DE 19801
Telephone: 302-777-4350
E-mail: aroot@archerlaw.com

And

Barbra R. Parlin, Esq.
Holland & Knight LLP
31 West 52nd Street
New York, NY 10019
Phone:  212.513.3210
Facsimile:  212.385.9010
E-mail:  barbra.parlin@hklaw.com
*Counsel for Defendant DMRJ Group LLC*

32