# **Exhibit B**

## PROMISSORY NOTE

Maximum Principal Amount: US$ 150,000,000

New York, New York
As of August 12, 2015

FOR VALUE RECEIVED, the undersigned, PLATINUM PARTNERS VALUE ARBITRAGE FUND, L.P., a Cayman Islands limited partnership with its chief executive office located at 250 West 55th Street, 14th Floor, New York, New York 10019 (the "Borrower"), hereby unconditionally promises to pay to the order of each lender (together with its successors and assigns, each a "Lender"), to such account of a Lender, as such Lender may designate, the principal amount corresponding to such Lender (each a "Principal Amount") or so much thereof as may be outstanding from time to time, together with all accrued and unpaid interest with respect to such Lender thereon.

The Borrower hereby agrees, for the benefit of each Lender, as follows:

1.      Interest on the Principal Amount corresponding to each Lender shall be due and owing to the applicable Lender on the first Business Day of each month commencing with September 1, 2015 and on the Maturity Date (as defined below), at a rate equal to one percent (1.0%) per month, provided the Principal Amount with respect to each Lender required to be repaid by the Borrower to the applicable Lender under this Promissory Note (as amended, restated, modified and/or supplemented from time to time, this "Note"; the total amount owing to all Lenders hereunder, the "Loan") shall be paid to the applicable Lender in full by the Borrower 12 months from the date that such Lender's payment is received ( the "Maturity Date"). Interest on the principal amount of the Loan shall be calculated on the basis of the actual number of days elapsed in a given calendar month and an assumed 360-day year. After 6 months from the date hereof, the Borrower may at any time, at its option and upon not less than thirty (30) days' prior written notice from the last day of the calendar month that the request is made (such written notice may not be made prior to 6 months from the date hereof) to the Lenders, prepay the outstanding principal of the Loan (the "Prepayment Amount"), in whole at any time or in part from time to time.  Each such Prepayment Amount to be accompanied by the payment of accrued interest at a rate equal to one percent (1.0%) on any outstanding principal amount of the Loan as of the date of such prepayment. Any such Prepayment Amount paid by the Borrower to the Lenders shall be distributed to the Lenders *pro rata* in proportion to the outstanding principal amount of the Loan attributable to such Lenders and lender at the time of such prepayment.  After 6 months from the date hereof, and, with respect to each Lender, at a Lender's option, and upon not less than thirty (30) days' prior written notice from the last day of the calendar month that the request is made (such written notice may not be made prior to 6 months from the date hereof), the outstanding portion of such Lender's Principal Amount (the "Call Amount") as of the end of the calendar month of the date of such election shall be due and owing to such Lender on the date set forth on the written notice, without penalty.  Each such Call Amount to be accompanied by the payment of accrued interest at a rate equal to one percent (1.0%) on any outstanding principal amount of the Loan as of the date of payment of such Call Amount.

2.      As collateral security for all indebtedness, obligations and other liabilities of the Borrower to the Lenders now or hereafter arising evidenced by this Note, the Borrower hereby transfers, grants and pledges a continuing perfected security interest in all of the Borrower's right, title and interest in and to the assets held by the Borrower on the date hereof, all options and other rights, contractual or otherwise, in respect thereof and all distributions, cash, instruments and other property from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of such assets, and all proceeds of any and all of the foregoing (collectively, the "Collateral").  Such security interest shall be subordinated to the first priority security interest provided by the Borrower pursuant to those certain Notes dated June 17,

2015 and July 15, 2015 (and its predecessor Notes). The Borrower shall, from time to time, (i) immediately take all actions as may be reasonably requested by the Lenders to perfect the security interest of the Lenders in the Collateral, including, without limitation, signing and filing of UCC-1 Financing Statements, and (ii) immediately take all actions as may be reasonably requested from time to time by the Lenders so that control of such Collateral is obtained and at all times held by the Lenders, subject to the existing security interest. All of the foregoing shall be at the sole cost and expense of the Borrower.

3.      If this Note or any payment hereunder becomes due on a day which is not a Business Day (as defined below), the due date of this Note or payment shall be extended to the next succeeding Business Day, and such extension of time shall be included in computing interest and fees in connection with such payment. As used herein, "Business Day" shall mean any day other than a Saturday, Sunday or day which shall be in the State of New York a legal holiday or day on which banking institutions are required or authorized to close.

4.      All payments shall be made by Borrower to the Lenders at 250 West 55th Street, 14th Floor, New York, New York 10019 or such other place as the Lenders may from time to time specify in writing in lawful currency of the United States of America in immediately available funds, without counterclaim or setoff and free and clear of, and without any deduction or withholding for, any taxes or other payments.

5.      This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or the Lenders, except by an agreement in writing signed by the Lenders and the Borrower.

6.      Whenever used, the singular number shall include the plural, the plural number shall include the singular, and the words "Lender" and "Borrower" shall include their respective permitted successors, assigns, heirs, executors and administrators.

7.      Notwithstanding the above, from time to time, without affecting the obligation of Borrower or the successors or assigns of Borrower to pay the outstanding principal balance of this Note and observe the covenants of Borrower contained herein, without giving notice to or obtaining the consent of Borrower, the successors or assigns of Borrower or guarantors, and without liability on the part of the Lenders, each Lender may, with respect to such Lender's Principal Amount, at such Lender's option, decrease the maximum amount of the Note, extend the time for payment of said outstanding principal balance or any part thereof, reduce the payments thereon, release anyone liable on any of said outstanding principal balance, accept a renewal of this Note, modify the terms and time of payment of said outstanding principal balance, join in any extension or subordination agreement, release any security given herefor, take or release other or additional security, and agree in writing with Borrower to modify the rate of interest or period of amortization of this Note or change the amount of the monthly installments payable hereunder.

8.      Borrower and all others who may become liable for all or any part of this indebtedness hereunder do hereby severally waive presentment and demand for payment, notice of dishonor, protest, notice of protest, notice of nonpayment, notice of intent to accelerate the maturity hereof and of acceleration. No release of any security for the indebtedness hereunder or any person liable for payment of the indebtedness hereunder, no extension of time for payment of this note or any installment hereof, and no alteration, amendment or waiver of any provision hereof made by agreement between or among the Lender(s) and any other person or party shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower for the payment of all or any part of the indebtedness hereunder.

9.      Borrower represents that Borrower has full power, authority and legal right to execute, deliver and perform its obligations pursuant to this Note and that this Note constitutes a valid and binding obligation of Borrower.

10.     This Note was negotiated in the State of New York, the Loan was made by the Lenders and accepted by Borrower in the State of New York, and the proceeds of the Note delivered pursuant hereto were disbursed from the State of New York.

**11.     THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED, ENFORCED, AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE OR GIVING EFFECT TO ANY CHOICE OF LAW OR CONFLICTS OF LAW PRINCIPLES THEREOF.**

**12.     THE BORROWER AND THE LENDERS CONSENT AND AGREE THAT THE STATE OR FEDERAL COURTS LOCATED IN THE COUNTY OF NEW YORK, STATE OF NEW YORK SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES INVOLVING BORROWER OR THE LENDERS PERTAINING TO THIS NOTE, PROVIDED, THAT BORROWER AND THE LENDERS ACKNOWLEDGE THAT ANY APPEALS FROM THOSE COURTS MAY HAVE TO BE HEARD BY A COURT LOCATED OUTSIDE OF THE COUNTY OF NEW YORK, STATE OF NEW YORK. BORROWER ASSENTS AND SUBMITS TO PERSONAL JURISDICTION OF ANY SUCH COURT IN ANY ACTION OR PROCEEDING INVOLVING BORROWER OR THE LENDERS PERTAINING TO THIS NOTE. BORROWER HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS, COMPLAINT, AND OTHER PROCESS ISSUED IN ANY SUCH ACTION OR SUIT AND AGREES THAT SERVICE OF SUCH SUMMONS, COMPLAINT AND OTHER PROCESS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO BORROWER AT THE ADDRESS SET FORTH ABOVE AND THAT SERVICE SO MADE SHALL BE DEEMED COMPLETED UPON THE EARLIER OF BORROWER'S ACTUAL RECEIPT THEREOF OR THREE (3) DAYS AFTER DEPOSIT IN THE U.S. MAIL, PROPER POSTAGE PREPAID.**

**13.     TO THE FULLEST EXTENT ALLOWED BY LAWS OF THE STATE OF NEW YORK, THE BORROWER HEREBY KNOWINGLY, VOLUNTARILY, IRREVOCABLY AND UNCONDITIONALLY WAIVES TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS NOTE AND FOR ANY COUNTERCLAIM THEREIN.**

14.     The remedies under this Note shall he cumulative to, and not exclusive of, any rights or remedies otherwise available. A Lender shall not, by any act, delay, omission or otherwise, be deemed to have waived any of its rights or remedies hereunder and no waiver by a Lender of its rights or remedies hereunder shall be valid against such Lender unless in writing, signed by such Lender, and then only to the extent therein set forth. The waiver by a Lender of any right or remedy hereunder upon any one occasion shall not be construed as a bar to any right or remedy which it would otherwise have had on any future occasion.

15.     The liability of the undersigned shall be absolute and unconditional and without regard to the liability of any other party hereto.

16.     Borrower and the Lenders intend at all times to comply with applicable state law or applicable United States federal law (to the extent that it permits a Lender to contract for, charge, take, reserve or receive a greater amount of interest than under state law). If the applicable law (state or federal) is ever judicially interpreted so as to render usurious any amount called for under this Note, then it is Borrower's and the Lenders' express intent that all excess amounts theretofore collected by a Lender shall be credited against the unpaid principal balance of the Loan with respect to such Lender's Principal Amount (or, if the Loan has been or would thereby be paid in full, refunded to Borrower), and the provisions hereof immediately be deemed reformed and the amounts thereafter collectible thereunder reduced, without the necessity of the execution of any new document, so as to comply with applicable law, but so as to permit the

DOC ID - 21921472.8                                                          -3-

recovery of the fullest amount otherwise called for thereunder. All sums paid or agreed to be paid to a Lender for the use, forbearance or detention of the Loan shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Loan until payment in full so that the rate or amount of interest on account of the Loan does not exceed the maximum lawful rate from time to time in effect and applicable to the Loan for so long as the Loan is outstanding.

17.    Each Lender shall have the right to assign, in whole or in part, its interest in this Note and all of its rights hereunder, and all of the provisions herein shall continue to apply to the Loan. Each Lender shall have the right to participate its interest in the Loan with other parties. Each Lender shall provide prompt notice to Borrower of any assignment, in whole or in part, of this Note with respect to its Principal Amount. The term "Holder" as used herein shall mean each Lender and shall also include any transferee of this Note whose name has been recorded by the Borrower in the Note Register (as defined below). Each transferee of this Note acknowledges that this Note has not been registered under the Securities Act of 1933, as amended, (the "Securities Act") and may be transferred only pursuant to an effective registration under the Securities Act or pursuant to an applicable exemption from the registration requirements of the Securities Act. The Borrower shall maintain a register (the "Note Register") in its principal offices for the purpose of registering this Note and any transfer or partial transfer thereof, which register shall reflect and identify, at all times, the ownership of record of any interest in this Note. Upon the issuance of this Note, the Borrower shall record the name and address of each Lender in the Note Register as a Holder. Upon surrender for registration of transfer or exchange of this Note at the principal offices of the Borrower, the Borrower shall, at its expense, execute and deliver one or more new notes of like tenor and of a like aggregate Principal Amount with respect to a Lender, registered in the name of the Holder or a transferee or transferees. Every note surrendered for registration of transfer or exchange shall be duly endorsed, or be accompanied by written instrument of transfer duly executed by the Holder of such note or such holder's attorney duly authorized in writing. It shall be a condition precedent to any transfer or partial transfer of the record ownership of an interest in this Note that the Borrower register such transfer or partial transfer in the Note Register and otherwise comply in all respects with the provisions of this Paragraph 17, and the Borrower's failure to do so shall render any such transfer or partial transfer void *ab initio*.

18.    All understandings, representations and agreements heretofore had with respect to this Note are merged into this Note, which alone fully and completely expresses the agreement of Borrower and the Lenders. None of the Lenders or any other party have made any representation, warranty, or statement to Borrower in order to induce Borrower to execute this Note, and any and all claims for fraud in the inducement are expressly waived.

19.    Borrower hereby waives the right to assert a claim or counterclaim against each Lender for injunctive relief arising out of or relating to this Note, including, without limitation, any claim or counterclaim against a Lender relating to the exercise of their rights and remedies arising out of or relating to this Note. Borrower hereby acknowledges that any claim or counterclaim against a Lender arising out of or relating to this Note can be adequately remedied by an action at law for money damages.

20.    In the event that any provision of this Note is invalid or unenforceable under any applicable statute or rule of law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such statute or rule of law. Any such provision which may prove invalid or unenforceable under any law shall not affect the validity or enforceability of any other provision of this Note.

21.    Each party acknowledges that its legal counsel participated in the preparation of this Note and, therefore, stipulates that the rule of construction that ambiguities are to be resolved against the drafting party shall not be applied in the interpretation of this Note to favor any party against the other.

-4-

IN WITNESS WHEREOF, Borrower has caused this Note to be executed and delivered as of the day first above written.

Platinum Partners Value Arbitrage
Fund L.P., a Cayman Islands limited partnership

By: _____
    Name: Mark Nordlicht
    Title: CIO